2024 IL App (2d) 230071-U
No. 2-23-0071
Order filed January 10, 2024

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Lake County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 15-CF-174 |
| LENNY GASTON, | ) ) | Honorable Christen L. Bishop, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE BIRKETT delivered the judgment of the court.
Presiding Justice McLaren and Justice Mullen concurred in the judgment.

**ORDER**

¶ 1   *Held*: Where the trial court did not substantially comply with the admonishment requirement of Rule 401(a) before accepting defendant's waiver of counsel, the court's subsequent denial of defendant's motion to withdraw his guilty plea is reversed and the cause is remanded.

¶ 2   Defendant, Lenny Gaston, entered a fully negotiated guilty plea to one count of criminal sexual assault (720 ILCS 5/11-1.20(a)(4) (West 2014)) and was sentenced to 10 years in prison. He moved to vacate the judgment and withdraw the plea. The trial court denied the motion. On appeal, we remanded for compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). See *People v. Gaston*, No. 2-19-0277, ¶ 8 (2021) (unpublished summary order under Illinois

Supreme Court Rule 23(c)). On remand, after defendant and his appointed counsel could not agree on what issues to raise in a new postjudgment motion, the trial court allowed defendant to proceed *pro se*. The court then denied his motion. Defendant appeals, contending that, on remand, (1) the trial court and defense counsel denied defendant his constitutional right to counsel and (2) the court did not provide the required admonishments under Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) for a valid waiver of counsel. We reverse the denial of defendant's postjudgment motion and remand the cause.

¶ 3                                I. BACKGROUND

¶ 4     On February 11, 2015, a grand jury indicted defendant on 14 counts of various offenses against the victim in 2014. The trial court appointed Eric Rinehart, a special assistant public defender, to represent defendant.

¶ 5     On October 11, 2017, at a hearing a few days before the scheduled trial date, defendant appeared with Rinehart. Defendant told the trial court that he wanted to "fire [Rinehart] and get another lawyer due to ineffective [assistance of] counsel." He said that he had asked Rinehart to get DNA evidence retested but Rinehart had refused. In response, Rinehart told the court that the evidence had been retested but he had decided not to introduce the results at trial. Defendant replied that Rinehart had not shared discovery with him and had refused to file motions that defendant requested. Defendant clarified that he did not want to represent himself but, rather, wanted a new attorney. The court denied his request.

¶ 6     After a recess, the parties presented an agreement under which defendant would plead guilty to one count of criminal sexual assault, the State would dismiss the remaining charges, and the trial court would sentence defendant to 10 years in prison. After hearing a factual basis for the

plea and admonishing defendant (see Ill. S. Ct. R. 402(a) (eff. July 11, 2012)), the court accepted the agreement and entered judgment accordingly.

¶ 7 On October 13, 2017, defendant, by Rinehart, filed a motion to withdraw the guilty plea, but defendant withdrew the motion two days later. On November 14, 2017, defendant moved *pro se* to withdraw his plea. On January 17, 2018, he filed another *pro se* motion to withdraw his plea. On May 29, 2018, defendant filed an amended *pro se* motion to withdraw his plea. His court-appointed attorney, John Murphy,[1] filed a supplemental motion and a certificate of compliance with Illinois Supreme Court Rule 604(d) (eff. July 1, 2017). Murphy adopted the arguments in defendant's *pro se* motions and added a new contention. The trial court denied the supplemental motion to withdraw.

¶ 8 On appeal, we held that Murphy failed to file a proper Rule 604(d) certificate. We remanded for filing a valid certificate, the opportunity to file a new motion, and a new hearing. *Gaston*, No. 2-19-0277, ¶ 8.

¶ 9 Between the appeal and the issuance of our mandate, defendant filed several more *pro se* documents not related to the issues on remand. The trial court reappointed Murphy to represent defendant in the proceedings on remand.

¶ 10 On November 30, 2021, at a virtual hearing, the trial court decided "to ask [defendant] *** once and for all if he want[ed] a lawyer." Defendant responded that Murphy was "turning a blind eye" to his *pro se* motions, which alleged that he had been denied due process "from the beginning." The court told defendant that Murphy was obligated to file only motions that, in his

---

[1]In the interim, Rinehart was elected Lake County State's Attorney. Thereafter, the State was represented by a special prosecutor from the State's Attorney Appellate Prosecutor.

professional judgment, had arguable merit. Defendant said that Murphy was not listening to his complaints of error, particularly that Rinehart had been ineffective regarding the DNA evidence. The court reminded defendant that the proceedings were limited to whether he should be allowed to withdraw his guilty plea. When asked if he wanted Murphy to stay as his counsel, defendant said yes. The court continued the cause to February 8, 2022.

¶ 11   On February 8, 2022, at a virtual hearing, Murphy told the court that he had filed a Rule 604(d) certificate but that defendant then "made some representations he needed to review the motion or discuss something with [Murphy]," which led Murphy to believe that he now had to file "a new 604D." Murphy explained that defendant wanted the motion to withdraw the plea to include matters that did not belong there. After further discussion, they reached an "impasse." Murphy believed that defendant did not want to speak with him anymore yet did not want to proceed *pro se*.

¶ 12   The trial court told defendant that the parties were there "solely [on] the [Rule] 604[(d)] issue and the motion to withdraw the plea." Defendant responded that he had repeatedly asked Murphy "to amend the motion to withdraw any issue in this case [*sic*] like due process rights." The court reiterated that the proceedings on remand were limited to whether to allow defendant to withdraw his plea. Defendant said that he wanted Murphy to include other matters because Rule 604 stated that any issue not raised would be waived. The court allowed Murphy and defendant one more opportunity to discuss the case. The court set March 8, 2022, for status, at which time defendant could proceed *pro se* if he so wished. The following colloquy ensued:

> "THE DEFENDANT: I have something to say. May I reads [*sic*] this for the—
>
> THE COURT: No, not at this time because today was only for status.
>
> THE DEFENDANT: You refusing me to read these documents?"

¶ 13    The trial court stated that defendant would receive "one more chance" to talk to Murphy. The hearing continued:

"THE DEFENDANT: I don't need no more time to do that.

THE COURT: Then you are asking then that you proceed on your own?

THE DEFENDANT: I am asking the Attorney General—(unintelligible)

THE COURT: Sounds like at this time, Mr. Murphy, I am going to discharge you ***.  [Defendant] has clearly on the record stated that he does not want Mr. Murphy to represent him.  ***  So Mr. Murphy you are discharged from the case.

That means, Mr. Gaston, I am not appointing an attorney[.]  ***  So you can have [Murphy].  ***  Or you can represent yourself.  Those are your options.  ***.

THE DEFENDANT: I don't have a choice.  Let me talk one more time.  I don't have a choice.  I guess I am forced to do whatever you want me to do, right?

THE COURT: You're not forced to do anything.  ***  So are you telling me you would like to have [Murphy] talk to you one more time?

THE DEFENDANT: I don't have a choice.  Yes.

MR. MURPHY [(DEFENSE COUNSEL)]: I will arrange a phone call.  We'll be back then March 8."

¶ 14    On March 8, 2022, at a virtual hearing, Murphy told the trial court that he had tried to explain to defendant why he could not address issues other than the challenge to the guilty plea, but defendant "disagree[d] vehemently."  Defendant responded that he had simply asked Murphy whether the motion to withdraw the plea "could *** add [the] State being un[c]onstitutional, and my rights have been violated.  I was forced to take this, to take this plea deal.  That's all I was

trying to get him to understand." The court asked defendant whether he could work with Murphy. Defendant said, "I can."

¶ 15    This exchange followed:

> "THE COURT: So Mr. Murphy, *** it sounds like you were not able to have much of a discussion at all. Are you in a position to stand on the motion filed or is that part of the problem, ***?

> MR. MURPHY: Judge, the problem I am going to run into, as I said, I was able to read the brief submitted. I cannot file a 604D. When I reviewed all contentions of error in the plea and sentencing and made amendments, when [defendant] continuously said we have not discussed any of those things, then I can't file that 604D because he's telling me there are more things. I am happy to listen. I would love to research them so we could submit a completed motion to withdraw."

The court continued the matter for Murphy to have further discussions with defendant.

¶ 16    At a hearing on April 26, 2022, Murphy told the trial court that he needed to file an amended Rule 604(d) certificate stating in part that he had communicated with defendant. However, he could not do so because they were still at an impasse over what issues to raise in the motion to withdraw the plea. Murphy added that defendant kept asking him for "documentation" that he did not possess or consider relevant to the motion. Defendant told the court that he and Murphy were at an impasse because Murphy refused his requests to obtain "certain documentation" and "investigate things." Specifically, defendant claimed that, on August 20, 2021, he had signed a "contract" with the police department that obligated the State to dismiss the charges. He wanted Murphy to obtain this document and present it to the court. In response, Murphy told the court that the document said only that defendant would hold the police harmless

for any injury that he might have suffered in custody.[2]  The court again reminded defendant that the motion to withdraw had to be filed, heard, and decided before the court could address the other issues that defendant wished to raise.  Murphy agreed.  Defendant, however, insisted that the plea deal was irrelevant because of the "contract."  The court agreed to hold one final hearing before deciding whether to discharge Murphy.

¶ 17    The cause was continued several more times.  On November 22, 2022, at a virtual hearing, Murphy stated that he and defendant were "at an impasse as to what should be included" in the motion to withdraw the guilty plea: defendant wanted to include "collateral issues" that Murphy believed were improper.  Defendant stated that any issue not raised in the motion would be waived and that he had "a right to attach anything," including "a due process violation which should have been brought up on a motion to squash [*sic*] the motion to suppress evidence and dismiss the indictment [*sic*]."  Defendant complained that Murphy would not file "new supplemental motions to withdraw pleas" or motions "to squash [*sic*] the arrest and suppress evidence, to dismiss the indictment."  The court reiterated to defendant that these issues were not before the court and that Murphy had an obligation not to raise frivolous issues.  The hearing continued:

"THE COURT: However, if you don't want [Murphy] to represent you on the motion to withdraw your plea, then I will discharge him, and you can represent yourself.  But, otherwise, on this issue, the motion to withdraw the plea, we're going to have to let him do his job.  He's your lawyer.

But if you don't want him, then I'll let you represent yourself *** I don't want this dragging on and on for you where then you've served all your time before you've even got your case up on appeal.  ***.

_____

[2]The document is in the record on appeal.  We agree with Murphy's characterization of it.

> So you need to decide. Do you want Mr. Murphy to represent you and proceed forward with the motion to withdraw the plea that is filed; or do you want to delay this further, up to you, and represent yourself?
>
> THE DEFENDANT: Yes, I would like for him to get off my case. He's arguing something that is frivolous, Your Honor, that I filed November the 14th, 2017, May of—29, 2018, [*sic*] *** but he don't [*sic*] want to file any additional motions that where [*sic*] I would have an added representation. *** What I'm filing now is a new amended motion, Your Honor, motion to withdraw.
>
> THE COURT: Okay.
>
> THE DEFENDANT: I'm stating all these facts in this case. I was forced to take this plea deal because *** I don't even see the discovery. I can't even see the discovery. How can I sit up here and defend myself when I've been denied due process—
>
> THE COURT: All right. So—
>
> THE DEFENDANT: —discovery.
>
> THE COURT: All right. *** So it sounds like you want to discharge Mr. Murphy and that you want to—you're asking leave of Court to file an amended motion to withdraw your plea; is that correct?
>
> THE DEFENDANT: Yes, ma'am.
>
> THE COURT: All right. Mr. Murphy, you are discharged."

¶ 18 On March 1, 2023, the trial court heard the previously filed motion to withdraw. The court began with this exchange:

> "THE COURT: ***

I do want to confirm—I know I ask you every time, but [defendant] did have appointed counsel. Appointed counsel has been discharged. [Defendant] has informed me repeatedly that he prefers to represent himself.

Is that still the case, *** that you want to represent yourself in this matter?

THE DEFENDANT: I don't want to because I'm not a licensed attorney. The stuff that I asked my previous attorney to file that was very relevant to the case, they refused to do it. So I'm being forced to represent myself so I can bring these issues out ***."

¶ 19    The trial court recounted the history of the proceedings on remand and asked defendant, "So knowing you cannot choose your attorney and knowing, *** you did not want Mr. Murphy as your lawyer, are you wanting to proceed today representing yourself?" Defendant responded that he did not have a choice. The exchange continued:

"THE COURT: Okay. *** [T]he issue is whether the defendant has the requisite capacity to make an intelligent and knowing waiver of his right to a [*sic*] counsel. A court should consider the defendant's age, level of education, his mental capacity, and his prior involvement in legal proceedings.

The Court's previously admonished [defendant] about representing himself. I can note in looking at his age, level of education, mental capacity ***.

His—he files his own motions. He has filed extensive motions. That includes references *** to case law, to statutes. He has made discovery requests and has been able to clearly articulate several times for the record his stance, his position, and argue on his own behalf.

And so at this time I do believe that [defendant], for the reasons he stated, has waived his right to counsel in the sense of that counsel was to be provided in the sense of

Mr. Murphy and that is not a counsel of his choosing or his liking, and so he is indicating, even if he feels it is by no choice of yours that, \*\*\* you're going to proceed today representing yourself?

THE DEFENDANT: Yes, ma'am."

¶ 20　After hearing evidence and argument, the trial court denied defendant's motion to withdraw his plea.

¶ 21　This timely appeal followed.

¶ 22　　　　　　　　　　　　　II. ANALYSIS

¶ 23　On appeal, defendant argues that his right to counsel was violated in two respects in the proceedings on remand.　First, he contends that Murphy and the trial court forced him to proceed *pro se* by needlessly refusing to advance his case, based on the erroneous assumption that Murphy could not file a valid Rule 604(d) certificate until he and defendant agreed on what to raise in the accompanying motion.　Second, he contends that his waiver of counsel was invalid because the court did not substantially comply with Rule 401(a).　Because we agree with defendant's second contention, we reverse and remand without addressing his first contention.

¶ 24　Although defendant did not raise this issue at the trial level, denying the right to counsel is a type of structural plain error that may be raised for the first time on appeal.　*People v. Langley*, 226 Ill. App. 3d 742, 749 (1992).

¶ 25　Rule 401(a) reads:

"Any waiver of counsel shall be in open court.　The court shall not permit a waiver of counsel by a person accused of an offense punishable by imprisonment without first, by addressing the defendant personally in open court, informing him of and determining that he understands the following:

(1) the nature of the charge;

(2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and

(3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." Ill. S. Ct. R. 401(a) (eff. July 1, 1984).

¶ 26    A waiver of counsel is ineffective unless it is preceded by proper Rule 401(a) admonishments. *People v. Dyas*, 2023 IL App (3d) 220112, ¶ 14; *People v. Thomas*, 335 Ill. App. 3d 261, 263 (2002). The trial court must provide the admonishments when the court learns that the defendant is choosing to waive counsel. *Langley*, 226 Ill. App. 3d at 750. Substantial compliance with Rule 401(a) is sufficient (*People v. Campbell*, 224 Ill. 2d 80, 84 (2006)), particularly when the defendant appears to have a " 'high level of sophistication.' " (*Thomas*, 335 Ill. App. 3d at 264 (quoting *People v. Meeks*, 249 Ill. App. 3d 152, 172 (1993))).

¶ 27    We must remind both the State and the trial court that Rule 401(a) admonishments are necessary and not difficult to provide. We note that, according to standards promulgated by the American Bar Association, "At every state of representation, the prosecutor should take steps necessary to make a clear and complete record for potential review." Am. Bar Ass'n, *Criminal Justice Standards for the Prosecution Function* § 3-1.5 (4th ed. 2017), https://www. americanbar.org/groups/criminal_justice/standards/ProsecutionFunctionFourthEdition/ (last visited Jan. 2, 2024) [https://perma.cc/FGG8-DMYR]. Of course, the trial court has an independent obligation to comply with the clear command of Rule 401(a).

¶ 28    We turn to the pertinent case law. In *Thomas*, the defendant, by counsel, entered a negotiated guilty plea to aggravated criminal sexual abuse and was sentenced to six years'

imprisonment. *Thomas*, 335 Ill. App. 3d at 262. Later, the defendant filed a *pro se* motion to withdraw the plea. *Id.* The trial court appointed counsel, who also filed a motion to withdraw the plea. *Id.* at 262-63. The defendant then amended his *pro se* motion to withdraw. *Id.* at 263. At a hearing on the motion, the trial court asked him whether he wanted to represent himself. *Id.* The defendant said yes, and the court immediately discharged defense counsel. *Id.* Following a hearing, the court denied the defendant's motion to withdraw the plea. *Id.*

¶ 29 On appeal, we held that the defendant's waiver of counsel was ineffective, entitling him to new postjudgment proceedings. *Id.* at 265. We recognized that the admonishments the defendant had received per Illinois Supreme Court Rule 402(a) (eff. July 1, 1997) at the plea hearing included most of the Rule 401(a) admonishments. *Thomas*, 335 Ill. App. 3d at 264. However, we held that the Rule 402(a) admonishments did not support the waiver of counsel because they were given long before defendant actually decided to waive counsel. *Id.* We also held that the trial court did not even substantially comply with Rule 401(a), as the court provided *none* of the required admonishments before permitting counsel to withdraw. *Id.*

¶ 30 *Thomas* is on point and controls this case. Here, when defendant told the trial court that he wished to represent himself, the court did find on the record that defendant was capable of making an intelligent waiver of counsel. However, that was not enough; the court had to comply substantially with Rule 401(a)'s admonishment requirement. But the court provided no admonishments at all.

¶ 31 In *Dyas*, a Third District case, the defendant, by counsel, entered a negotiated guilty plea to a drug offense. *Dyas*, 2023 IL App (3d) 220112, ¶¶ 3-4. After the defendant filed what the trial court construed as a *pro se* motion to withdraw his guilty plea, making claims against his current appointed counsel, the court appointed counsel from another county. *Id.* ¶ 5. At a subsequent

hearing, counsel informed the court that he and the defendant had a breakdown in communication. *Id.* ¶ 8. The court asked the defendant if he wanted counsel to represent him, and the defendant said no. *Id.* The court then immediately discharged counsel and told the defendant that he could represent himself or hire an attorney. *Id.* Later, the defendant chose to represent himself at a hearing on his motion to withdraw the plea. *Id.* ¶ 11. The court denied the motion. *Id.* The appellate court reversed and remanded, reasoning that, when the defendant stated that he no longer wanted counsel, the trial court provided "no Rule 401(a) admonitions at all" before granting his request. *Id.* ¶ 19. *Dyas*, like *Thomas*, is directly on point and controls here.

¶ 32 However, the State urges us to reject *Thomas* and *Dyas* and instead follow *People v. Young*, 341 Ill. App. 3d 379 (2003), a Fourth District opinion. There, while represented by appointed counsel, the defendant was convicted by a jury of aggravated battery and sentenced to three years in prison. *Id.* at 381-82. He filed postjudgment motions claiming his sentence was excessive and requesting new counsel because his trial counsel had been ineffective. *Id.* at 382. At the hearing on the motions, the trial court informed the defendant that he would not receive new counsel and must choose between keeping his present attorney and representing himself. *Id.* The defendant chose self-representation, and, after a hearing, the court denied his excessive-sentence claim. *Id.*

¶ 33 On appeal, the defendant contended in part that his waiver of counsel was ineffective because the trial court had provided no Rule 401(a) admonishments after learning that the defendant wanted to represent himself. *Id.* The appellate court majority disagreed that Rule 401(a) admonishments were required under the circumstances. *Id.* at 387. It reasoned that "[t]he plain language and logic of Rule 401(a) do not require admonishing a defendant who has been convicted and sentenced of the nature of the charge [of] which he was just convicted and the sentence he just received." *Id.* The dissenting justice contended in part that the plain language of Rule 401(a)

makes it mandatory for the trial court to provide the admonishments to the defendant after learning that he wants to proceed *pro se*, whether his decision comes before, during, or after trial. *Id.* at 389 (Appleton, J., dissenting).

¶ 34     The State endorses the reasoning of the *Young* majority, emphasizing that, through the Rule 402(a) admonishments and the subsequent guilty plea and sentence, defendant must already have known everything that Rule 401(a) admonishments would have told him. This is the same argument that we considered and rejected in *Thomas*. See *Thomas*, 335 Ill. App. 3d at 264. Moreover, we agree with the *Young* dissent that the plain language of Rule 401(a) is both mandatory and categorical. While the State makes a plausible argument for revising Rule 401(a), we have no power to do so. Thus, we decline the State's request to depart from the plain meaning of the rule.

¶ 35                              III. CONCLUSION

¶ 36     For the reasons stated, we reverse the denial of defendant's motion to withdraw his guilty plea, and we remand the cause for postjudgment proceedings consistent with this order.

¶ 37     Reversed and remanded.